lots and received payment as an agent, there is no satisfactory evidence that any accounts were kept between them showing the existence of the relation of principal and agent. Woods states distinctly that he kept no account of sales made or moneys received, and that he does not know that Todd had any books or papers showing these facts. The omission to do this, and the vague and unsatisfactory statements as to the settlements between these parties, involving large amounts of money, are certainly indications of the real character of the conveyance to Todd. Men of ordinary intelligence and prudence do not conduct their business in this loose manner. The instincts of self-interest usually induce all men, in their business transactions, to make full and exact entries of moneys received or paid. And the mind is forced to the conclusion, in the absence of any proof that this was done, as between a principal and agent, that the parties did not recognize the existence of the relation. In this case, there is no book, voucher, or paper of any kind showing any receipts of moneys by Woods as the agent of Todd, or any payments to the latter in that capacity. This is not accounted for by the lapse of time since these alleged transactions took place. The deposition of Woods was taken within less than ten years from the date of their occurrence; and it is not reasonable to suppose that within that period the written evidence of what passed between the parties could have been lost or destroyed. There is no pretense in this case of such loss or destruction.

Without further remarks or comments, I am obliged to say, that looking to the conduct of these parties from the first to the last of their transactions, it seems irreconcilable with the supposition that the transfer of the property in question was made in good faith. I cannot doubt that t was a mere device to put the property of Woods beyond the reach of his creditors; and viewed in this light, it has the infection of legal fraud. That both the parties are implicated in it seems hardly to admit of doubt. It is indeed insisted that there is no proof that the defendant Todd had any knowledge of the embarrassment of Woods at the time of the execution of the deed. There is no such direct evidence; but can it be doubted, considering that the parties were brothers-in-law, living near to each other, and were on terms of intimacy and friendship, that he had such knowledge? Todd was then an aged man and in infirm health; and it is altogether improbable that he would have purchased this property under such circumstances at a price greatly beyond its real value, with the purpose of laying off a town and making profit by the sale of town lots. While it is quite conceivable that he may have been influenced by a benevolent desire to shield his brother-in-law from impending pecuniary ruin, and

for this object was willing to place himself in the position of a purchaser of the property, yet, in a legal aspect, he was a mere trustee for the creditors of Woods. And it avails nothing that these parties insist or swear that the sale was in good faith. In the case of Hendricks v. Robinson, before cited, Chancellor Kent remarks: "It is indeed true, that the purchaser and the vendors say that this was an honest and bona fide sale, but do not the facts, which they all admit, outweigh the declaration? And can a mere assertion be compared to the unequivocal language of facts and the necessary inference of law?" It results from these views that a decree must be entered for the plaintiff. It must declare the conveyance from Woods to Todd fraudulent and void; but as it is admitted by the plaintiff's counsel that those who have purchased lots in the town are purchasers for a valuable consideration and without notice of any fraud in the sale to Todd, their rights are not to be affected by the decree. The decree must also direct that the unsold portion of the tract be sold for the benefit of the creditors of Woods. And so far as Todd has received moneys for the sale of lots or the rent of the dwelling house, coal-bank, and ferry, he must be held to account for the same. This will involve the necessity of a reference to a master, who will be authorized to examine the defendant Todd on oath and report to this court.

---

## Case No. 176.
### ALEXANDER v. TURNER.
[1 Cranch, C. C. 86.][1]
Circuit Court, District of Columbia. April Term, 1802.

LANDLORD AND TENANT — DISTRESS FOR RENT — PAYMENT BY ACCEPTED BILL.

An acceptance by the tenant of a bill drawn by the landlord for the rent is no bar to a distress, if the bill be not paid.

At law. Replevin [by Alexander against Turner, as bailiff of Patten.] Cognizance, as bailiff, for rent arrear. Plea, "No rent arrear," and issue:

Mr. Taylor, for plaintiff, moved for leave to withdraw the plea of "No rent arrear," and file a new plea setting forth that Patten had drawn an order on the plaintiff, for three quarters' rent, which the plaintiff had accepted to pay; and that, as to the fourth quarter's rent, he tendered it before the distress was made.

THE COURT refused the motion. The cause was then tried on the issue joined, and the court instructed the jury that the acceptance did not destroy the debt due for the rent, and that it was no bar unless it had been paid.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]